IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

VIRGINIA SAM, on behalf of
herself and all similarly
situated individuals,

       Plaintiff,

v.                           CIVIL ACTION NO.: 1:13cv249

GLASSER & GLASSER, PLC,

       Defendant.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

COMES NOW the defendant Glasser & Glasser, PLC, by counsel, and as and for its Brief in Support of the Motion to Dismiss filed this same day pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, states the following:

## PRELIMINARY STATEMENT

This putative class action suit arises from what can only be described as a fanciful interpretation of Virginia law.  Plaintiff asserts that under Virginia law (viewed in narrow isolation) prior to July 1, 2012, judgment creditors could not collect the costs associated with pursuing garnishment actions against judgment debtors.  Plaintiff's argument is simply not supported by applicable law, when viewed in its totality.  Moreover, plaintiff's claims under the Fair Debt Collection Practices Act (hereinafter

1

"FDCPA"), 15 U.S.C. § 1692, et seq., are not supported by the facts alleged.  Critically, because the issuance of a garnishment summons constitutes an action by the state court, the claims herein are also barred by the *Rooker-Feldman* doctrine and collateral estoppel.  Plaintiff also has not characterized her debt as a consumer debt, a fact necessary under the FDCPA.  Given the facts alleged herein, this defendant is entitled to the *bona fide* error defense under the FDCPA.  For the same reasons the putative representative plaintiff's claims fail, so do the claims of the putative class members.

## **FACTS**[1]

Plaintiff, a Virginia resident, files this action seeking damages and attorney's fees for alleged violations of the FDCPA  While the Complaint makes a facial claim for actual and statutory damages, it is utterly devoid of any allegation of actual loss that has been suffered by plaintiff or the class members.  Rather, it is obvious from the Complaint that plaintiff seeks only the statutory damages available under the FDCPA.  Likewise, plaintiff has alleged that she is a member of a putative class of individuals similarly situated; however, the Complaint as offered is devoid of any meaningful showing that a class of others similarly situated to plaintiff exists.

---

[1]    As is necessary in submitting a matter to the Court for resolution pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, the factual summary attached hereto is distilled from the allegations contained in plaintiff's Complaint, the documents referenced therein, or the pertinent documents that have been referenced by plaintiff but omitted from the Complaint.  The recitation of those purported "facts" here in no way should be construed by the Court or any party as agreement with, concession to or acquiescence in any allegations of unlawful or otherwise improper conduct by the defendant. Moreover, the defendant does not necessarily concede that all factual averments as alleged by plaintiff, whether or not material here, are accurate summaries of what, in fact, occurred.

Case 1:13-cv-00249-CMH-TCB   Document 7   Filed 06/07/13   Page 3 of 22 PageID# 26


The facts specific to Ms. Sam's case are simply stated.  Ms. Sam was the judgment debtor in an action filed by this defendant representing FIA Card Services, N.A.  That action was reduced to judgment on or about December 3, 2010, by order of the Loudoun County Circuit Court.  The judgment order in that case awarded FIA Card Services, N.A., a judgment in the amount of $26,751.89, plus $96.00 in judgment costs. Nothing contained in the Complaint challenges either the lawfulness of the judgment at issue or the manner in which that judgment was obtained.

Thereafter, although the Complaint is silent on precisely when the garnishment summons at issue was requested, this defendant issued a Suggestion for Summons in Garnishment on April 16, 2012.  A copy of the Suggestion for Summons in Garnishment is attached hereto as Exhibit A, along with the materials submitted to the Court to initiate the Garnishment proceedings.   Included in those materials is a copy of the December 3, 2010, Judgment Order entered by the Loudoun County Circuit Court which served as the basis for the garnishment proceedings.   The Suggestion for Summons in Garnishment was submitted using the court mandated form, completed in accordance with the instructions issued by the Virginia Supreme Court. The Loudoun County Circuit Court then issued a Garnishment Summons[2] in accordance with the statutorily mandated form.  *See* Exhibit B and Va. Code Ann. §8.01-512.3.

---

[2]

The face of the Garnishment Summons does contain a facial typographical error that does not effect the issues in the case at bar.  While the Suggestion for Summons in Garnishment correctly recites the judgment costs awarded as $96.00, the Garnishment Summons itself lists those costs as $963.00 owing to what is believed to be an errant keystroke depressing both the "6" and "3" keys on a keyboard numeric keypad. Importantly, the total balance owing is correct on both documents and the garnishment costs claimed are correctly recited on both documents.

The instant Complaint describes this action as an attempt to collect funds that were not awarded by the state court in the underlying judgment or otherwise authorized by Virginia law.  *See* Complaint at ¶13.  Plaintiff specifically refers to the attempt to collect $73.50 in garnishment costs.  *Id.*  Plaintiff contends, incorrectly, that Virginia law on April 16, 2012, did not allow for the collection of garnishment costs from a judgment debtor.  Other than the reference to the attempt to collect garnishment costs, the Complaint is utterly devoid of any other specific reference to allegedly unlawful conduct on the part of this defendant, or anyone for whom it is responsible.

Plaintiff's instant action followed.


## STANDARD OF REVIEW

Within the last several years, the standard for consideration of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure has undergone considerable refinement.  In light of recent Supreme Court authority, a Complaint must state "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To satisfy this plausibility requirement, the plaintiff's submission must "demonstrate more than a 'sheer possibility that a defendant acted unlawfully,'" but must make a showing of facts sufficient which, if true, are enough to show that the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)(quoting *Iqbal*, 556 at 678).  The mere offering of labels and conclusions in a formulaic pleading is not sufficient, and the district courts are free to discount such insufficient and "unadorned" allegations.  *Id*.  In sum, the age of

boilerplate complaints that survive simply because the drafter is familiar with the elements of a cause of action has passed, and the well-pleaded facts of a claim will now govern its viability.

## ARGUMENT

Plaintiff's claims that the defendant engaged in unlawful practices, in violation of the FDCPA, fails to state a claim upon which relief may be granted.  As a threshold matter, it bears noting that Congress enacted the FDCPA in order:

> . . . to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. §1692(e).  In order to prevail in a claim under the FDCPA, a debtor must show (1) that the plaintiff has been subjected to conduct in violation of the FDCPA in collection of a debt, (2) that the defendant is a debt collector within the meaning of the FDCPA, and (3) that the subject debt was a consumer debt as defined by the Act.  *See Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 647 (E.D.Va. 2010).  Here, there will be no dispute that the defendant was, in relevant part, a debt collector as defined by the FDCPA in attempting to collect the outstanding account by seeking to collect on the judgment against the plaintiff for the amounts due and owing on the credit card account. The remaining elements of such a claim are vigorously contested.

I.   **This Court lacks subject matter jurisdiction over this action pursuant to the Rooker-Feldman doctrine as it constitutes an impermissible attempt to invalidate an action of a Virginia court.**

This court lacks jurisdiction over this action under the *Rooker-Feldman* doctrine.

Federal courts have routinely treated the *Rooker-Feldman* doctrine as jurisdictional, and

"[b]ecause the *Rooker-Feldman* doctrine is jurisdictional, [federal courts] are obliged to

address it before proceeding further in [their] analysis." *Friedman's, Inc. v. Dunlap*, 290

F.3d 191, 196 (4th Cir. 2001); *see also Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311,

316 (4th Cir. 2003); *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198-99 (4th Cir.

2000); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 199 (4th Cir. 1997). Under the

*Rooker-Feldman* doctrine, a "party losing in state court is barred from seeking what in

substance would be appellate review of the state judgment in a United States district

court." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06. Federal court authority to resolve

appeals of a state court judgment rests with the Supreme Court. See 28 U.S.C. §

1257(a); *Brown & Root, Inc.*, 211 F.3d at 198-99.  This rule is, admittedly, subject to

certain narrow exceptions, for example *habeas corpus.  See, e.g.,* 28 U.S.C. §2254. As

a general rule under the circumstances of this case and those like it, "[a] litigant may

not circumvent these jurisdictional mandates by instituting a federal action which,

although not styled as an appeal, 'amounts to nothing more than an attempt to seek

review of [the state court's] decision by a lower federal court.'" *Stillwell*, 336 F.3d at 316

(quoting *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997)). The United States Court of

Appeals for the Fourth Circuit has weighed the effect of the doctrine:

> The controlling question in the *Rooker-Feldman* analysis is whether a
> party seeks the federal district court to review a state court decision and
> thus pass upon the merits of that state court decision, not whether the
> state court judgment is presently subject to reversal or modification. Put

another way, if "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual," *Rooker-Feldman* is implicated.

*Jordahl*, 122 F.3d at 202 (quoting *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)). The doctrine applies not only to matters directly addressed by the state court, but also to "claims which are 'inextricably intertwined' with state court decisions." *Brown & Root*, Inc., 211 F.3d at 198 (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983)).  Where, as here, a plaintiff is claiming that the judgment of the state court is what caused their injury, the *Rooker-Feldman* doctrine applies.  *Smalley v. Shapiro & Burson, LLP*, No. 12-1266, slip op. at *16-17 (4th Cir. April 16, 2013) (unpublished) (Kiser, J.) (Recognizing refocus of *Rooker-Feldman* doctrine in *Exxon Mobile Corp. V. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005)).

Here, the *Rooker-Feldman* doctrine applies to bar the exercise of jurisdiction over the claims in the action since the plaintiff is seeking indirectly to invalidate the decision of the state court when it issued the Garnishment Summons in this action.  By issuing the Garnishment Summons in this case (and in every other case where the courts of the Commonwealth issue a garnishment summons upon suggestion), the state court approved the request for garnishment costs in the Suggestion of Garnishment.  This action by the state court constituted a finding that the judgment creditor was entitled to the amount sought as garnishment costs.  To be sure, plaintiff was certainly free to raise any challenge surrounding garnishment costs following the issuance of the Garnishment Summons in the state court; however, she did not voice any objection with the amount sought to the state court.  Plaintiff's unjustified failure to address the issue in the state tribunal is, at best, a procedural default that plaintiff

7

cannot seek to cure by instituting a federal proceeding that, in order to find in her favor, requires the federal court to declare the Garnishment Summons issued by the state court was itself unlawful.

Because plaintiff would have this federal district court declare that a summons issued by a court of the Commonwealth was wrongful in that it recited that the judgment creditor was entitled to garnishment costs, plaintiff's claims seek to invalidate the action of a state court. This court lacks jurisdiction over this action.

## II.    Glasser & Glasser PLC was acting within applicable Virginia law when it included the costs of issuing the garnishment in the balance owing from the garnishment.

The defendant did not violate the FDCPA when, in accordance with Virginia law, it sought to collect costs associated with the issuance of a garnishment against plaintiff's assets. Plaintiff presents several claims alleged to have arisen under various provisions of the FDCPA as follows: 15 U.S.C. § 1692d(1) (use of criminal means to collect a debt), 15 U.S.C. § 1692e(2)(A) (false representation of the character, amount, or legal status of the debt), 15 U.S.C. § 1692e(2)(B) (false presentation of the services rendered or compensation that may be lawfully received by the debt collector), 15 U.S.C. § 1692e(5) (threatening to take legal action that could not be taken), 15 U.S.C. § 1692e(10) (false representation as a means to collect a debt), and 15 U.S.C. § 1692f(1) (collection of amounts not permitted by law).

Notwithstanding the invective adjectives used by plaintiff to describe her claims, they are all reduced to the same core allegation: the defendant was not entitled to seek

costs of pursuing a garnishment from her.[3]  In particular, plaintiff's claims depend upon a tortured reading of one Virginia code section following its amendment by the Virginia General Assembly.  In 2012, Va. Code §8.01-511 was amended by two separate bills, the relevant one adding the language:

> All costs incurred by the judgment creditor after entry of the judgment, in aid of execution of the judgment and paid to a clerk of court, sheriff, or process server are chargeable against the judgment debtor, unless such costs are chargeable against the judgment creditor pursuant to § 8.01-475. Regardless of the actual amount of the fee paid by the judgment creditor, the fee for a process server chargeable against the judgment debtor shall not exceed the fee authorized for service by the sheriff. All such previous costs chargeable against the judgment debtor may be included by the judgment creditor as judgment costs in the garnishment summons form prescribed in § 8.01-512.3. This paragraph shall not be construed to limit any cost assessed by a court as part of the judgment.

Va. Code §8.01-511(d) as amended.  This amended code section took effect on July 1, 2012.  Plaintiff contends that since the precise language related to "all costs" being taxable to the judgment debtor was not present in the earlier version of the statute in effect at the time the garnishment was sought and issued against plaintiff, its inclusion in the amendment raises a negative implication that the debtor could not previously be compelled to pay garnishment costs.  According to plaintiff's Complaint, this is the entire basis of her claim and that of the class she purports to represent.

As an academic and legal exercise, however, plaintiff's contention fails out of hand.  First, fundamental principals of statutory construction compel the conclusion that statutes on related matters must be read to give effect to each.  Second, the legislative

---

[3]     Each of the counts in plaintiff's Complaint does allege that the actions of the defendant as to each count include but are not limited to the boilerplate language of the applicable section.  Critically, however, there is no allegation other than the pursuit of garnishment costs anywhere in the Complaint against the defendant.

history of the 2012 amendment to Va. Code § 8.01-511 does not support the conclusion that judgment creditors were unable to collect garnishment costs prior to the amendment.  Third, the plain text of the amended version of § 8.01-511 does not support the argued meaning.

Viewed in isolation, plaintiff's contentions regarding the negative implication of the 2012 amendment may have some cursory appeal.  Fundamental principals of statutory construction require that the amendment be read in conjunction with statutes on the same topic so as to give effect to both and not to render one a nullity at the expense of the other.  The conflict of two statutes is handled by Virginia courts in a accordance with settled procedure:

> [w]hen faced with apparently conflicting statutes, [the Virginia Supreme Court] applies a well-established principle of statutory construction.  If possible, [the court] must harmonize apparently conflicting statutes to give effect to both.

*Boynton v. Kilgore*, 271 Va. 220, 229 (2006) (quoting *Phipps v. Liddle*, 267 Va. 344, 346 (2004)) (internal quotations omitted).  This approach has been applied in Virginia for nearly a century. *See Kirkpatrick v. Bd. Of Supervisors*, 146 Va. 113, 125 (1926) ("[W]here two statutes are in apparent conflict they should be construed, if reasonably possible, so as to allow both to stand and to give full force and effect to each").

In the case at bar, this means that the Court must compare the pre-amendment version of Va. Code § 8.01-511 and the current version of Va. Code § 8.01-512.3 in effect now and at the time of the actions described in the Complaint.  Copies of both are attached here as Exhibits C and D, respectively.  The latter code section sets forth

the exact specifications of the garnishment forms that are to be used, and includes "garnishment costs" as a line item for use in totalling the total balance due.  Importantly, Va. Code § 8.01-512.3 was last amended in 2006, and even then only on matters wholly unrelated to the issue of garnishment costs.  If plaintiff's construction of pre-amendment Va. Code § 8.01-511 is followed, that is that judgment creditors could not recover garnishment costs from the debtor, then the provisions of Va. Code § 8.01-512.3 that specify the inclusion of garnishment costs in the total balance due is rendered a nullity.  Plaintiff's construction brings both statutes into opposition and, by no more nuance than a brute force reading, asserts that since the pre-amendment version of Va. Code § 8.01-511, read in isolation, does not expressly state within its text that garnishment costs were recoverable from a judgment creditor, that is the end of the discussion.

This is precisely the type of narrow reading that the Virginia Supreme Court has cautioned against and refused to apply.  The only construction of the amended version of Va. Code § 8.01-511 and Va. Code §8.01-512.3 (unchanged since 2006) that harmonizes the code sections is that garnishment costs are recoverable.  The pre-amendment version of Va. Code § 8.01-511 is silent on the point; yet, at the same time, Va. Code § 8.01-512.3 expressly authorizes the inclusion of garnishment costs in the total amount due and renders them subject to recovery as part of the garnishee's answer.  This has been so since the enactment of Va. Code § 8.01-512.3 in 1983.  *See* Exhibit E, legislative history of Va. Code § 8.01-512.3.  Without any prohibition in the

version of Va. Code § 8.01-511 in effect at the time the garnishment was pursued and with the express inclusion of garnishment costs as a line item constituting the total balance due under Va. Code § 8.01-512.3, the defendant acted within the law by seeking the recovery of garnishment costs against plaintiff.

This is the very construction that has been applied by Virginia courts, as demonstrated by the instructions accompanying the forms required to be used by the Virginia Supreme Court.  In Form CC-1485, 1999 version[4], attached hereto as Exhibit F, the Supreme Court of Virginia is directing judgment plaintiffs to list the amount incurred in pursuing the garnishment.  *Id*.  The Court then indicates that amount is to be included in the total sum to be relied upon by the garnishee.  The instructions for garnishment summons, Form CC-1486, 2005 version, attached as Exhibit G, specifically refer to the totals from the suggestion for summons in garnishment when resolving the total amount due. The forms relied upon by the defendant in initiating the garnishment are intended by the Virginia courts for use in exactly the fashion that the defendant employed them. The judgment creditor is, as a matter of law, entitled to recover its judgment costs from the debtor, and that is what this defendant attempted to effect.

The only construction of these code sections that does not effect violence upon the one at the expense of the other is that garnishment costs are recoverable from a judgment debtor in the manner attempted to be collected here.  As a threshold matter, it is important to recognize that not all garnishments return funds that are immediately sufficient to satisfy the judgment.  In these situations, subsequent garnishments are

---

[4]  The copies of Forms CC-1485 and CC-1486 reflect the same instructions that governed the completion of the garnishment costs sections of the Suggestion for Summons in Garnishment and Garnishment Summons that existed in April 2012.

allowed to permit a judgment creditor to obtain funds sufficient to satisfy the judgment. In some circumstances, funds are either not present or not adequate to cover the costs of even issuing the garnishment.  The pre-amendment version of Va. Code § 8.01-511 is silent on whether the costs of previous garnishments that were not collected previously are taxable to the judgment debtor in later proceedings.

There is no question, however, that Va. Code § 8.01-511 was amended and that the amendment was intended by the General Assembly to have an effect.  The effect was not to authorize collection of garnishment costs in a single garnishment proceeding for the first time.  Rather, the amendment was directed at allowing recovery of **ALL** costs associated with the issuance of garnishments, including the costs of previously issued garnishments that were not successful in returning funds sufficient to satisfy the judgment.

Plaintiff's narrow reading of the applicable code section is, paradoxically, too broad in scope.  Rather than focusing on all efforts to recover garnishment costs, some of plaintiff's contentions would arguably apply if she were claiming that the defendant were not entitled to collect costs associated with previous garnishments prior to July 1, 2012.  There was no express authority for collecting previous garnishment costs in subsequent, separate garnishment submissions in the previous version of Va. Code § 8.01-511, nor did the language of  Va. Code  § 8.01-512.3 clarify the issue as it relates to how to account for costs associated with previously issued garnishments.  Yet, even this argument does not apply here since plaintiff does not allege that the defendant was attempting to collect any garnishment costs other than those directly associated with the garnishment at issue.

Plaintiff's construction of the amended Va. Code § 8.01-511 also fails as it is wholly unsupported by the legislative history of the amendment to that statute.   The legislative inquiry from Delegate Sal Iaquinto had recognized the collection of costs associated with the issuance of previous garnishments (which had not fully satisfied the judgment amounts) had caused a split of opinions among the General District Courts of Virginia.   *See* Exhibit H, legislative inquiry of Delegate Sal Iaquinto.   The caption of the offered bills makes clear that this legislation, sponsored by Delegate Iaquinto, in the House of Delegates, and Senator Obenshain, in the Senate, was intended to deal with previous garnishments and the collection of costs associated with them.   The legislative histories of House Bill HB286 and Senate Bill SB561 are attached as Exhibits I and J.

Even a generous review of the legislative history on either the House or Senate side would not support an argument that the amendment was enacted to create a right, for the first time, for judgment creditors to collect garnishment costs, except to the extent that it created a right to recover costs from previous garnishments.   There is no evidence of any discussion by either legislative body that would indicate that such a new substantive right was being created.   This indicates the legislative acquiescence to the Virginia courts construction of Va. Code § 8.01-512.3 allowing the collection of garnishment costs.   *See Apex Hosiery Co. V. Leader*, 310 U.S. 469, 488 (1940) ("The long-time failure of Congress to alter the [Sherman] Act after it had been judicially construed . . . is persuasive of legislative recognition that the judicial construction is the correct one.").

Moreover, amending Va. Code § 8.01-511 is the proper place to have made that change to allow recovery of costs from previous efforts to garnish.  Since there would be no need to delineate between current and previous garnishment costs on the form itself as embodied in Va. Code § 8.01-512.3, clarifying the issue of previous garnishment costs was appropriate in the form of an amendment to § 8.01-511.

Even as amended, the plain text of Va. Code § 8.01-511 does not support the construction given to it by plaintiff.  The applicable amended language, quoted above, states plainly, that "[a]ll costs incurred by the judgment creditor after entry of the judgment, in aid of execution of the judgment and paid to a clerk of court, sheriff, or process server are chargeable against the judgment debtor, unless such costs are chargeable against the judgment creditor pursuant to § 8.01-475."  Va. Code § 8.01-511(d).  By using the term "all" to address which costs are recoverable by the judgment creditor, the legislature fulfilled its desire to allow for the recovery of all costs associated with the collection of garnishments, including the costs of unsuccessful garnishments that returned no proceeds.  There is no bar in the pre-amendment version of the statute to the collection of garnishment costs.

Because the defendant acted lawfully in attempting to collect costs associated with the single garnishment issued on April 16, 2012, all of plaintiffs FDCPA claims fail out of hand as they are singularly predicated upon the assertion that garnishment costs were not subject to collection from a debtor until July 1, 2012.  The same fate befalls the claims of the putative class members.

**III.    Plaintiff's individual Counts 1, 4, and 6 each fail to satisfy the terms of the FDCPA as pleaded.**

Plaintiff's submission fails to articulate facts that would satisfy the textual requirements under the FDCPA that plaintiff pursues.    This is particularly true under the *Twombly* and *Iqbal* standards now applicable to motions made pursuant to Rule 12(b)(6).

Count 1 is based upon a claimed violation of 15 U.S.C. § 1692d(1), alleging that the defendant employed or threatened to employ violence or criminal means to harm the physical person, reputation or property of any person.  Here, the record is beyond dispute that plaintiff had closed her accounts with the garnishee.  *See* Answer of Garnishee, Exhibit K.  There is no allegation that any form of violence or its threatened use underpins plaintiff's claim.  There is no basis to have alleged that any harm befell plaintiff's person, her reputation or her property even if plaintiff's arguments are believed.

Similarly, Count 4 is based upon 15 U.S.C. § 1692e(5) and its proscription of any threat to take an action that cannot legally be taken or not intended to be taken to collect a debt.  Here, the record is clear that the defendant actually instituted the garnishment proceedings by submission of the required Suggestion for Summons in Garnishment.  No allegation is contained in the Complaint that any defendant threatened to take any action.  Rather, the action intended was taken and, if found to have been unlawful, is addressed by other counts.

Count 6 is based upon a claimed violation of 15 U.S.C. § 1692f(1) and requires that a defendant "collect" any amount not expressly authorized by agreement or applicable law.  Plaintiff does not allege that any sums were collected from the garnishment and the record is clear that none were submitted in the garnishee's answer.  Without the collection of funds, this claim fails.

As such, as to these three claims, plaintiff's submission has failed to satisfy the textual requirements of the applicable provisions of the FDCPA, and must be dismissed.

## IV.    Issues related to collection of garnishment costs in this matter are collaterally estopped.

It has become axiomatic that the application of the doctrine of collateral estoppel precludes the relitigation of any issue "actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).  For the doctrine to apply, the party seeking to rely on the doctrine must show (1) the issue sought to be precluded is identical to the one previously resolved in litigation, (2) the issue was in fact determined in the prior proceeding, (3) the issue was a necessary part of the previous decision, (4) the prior judgment is final and valid, and (5) the party against whom the doctrine is sought to be applied had a full and fair opportunity to litigate the issue.  *Collins v. Pond Creek Mining Co.,* 468 F.3d 213, 217-18 (4th Cir. 2006).

Here, the total amount due in the garnishment, including the prayer for garnishment costs, was a necessary factor in the issuance of the garnishment and was fully addressed by the state court upon the issuance of the Garnishment Summons, finding that the total amount sought was appropriate to support the issuance of the Garnishment Summons.  While the Order resolving the issues is brief and describes the basis for its disposition as relating to the closure of plaintiff's accounts with the garnishee, the context of the dismissal order necessarily required the state court to have considered the validity of the total balance due in the Garnishment Summons.  *See* Exhibit L, Order dismissing garnishment.   Plaintiff offered no pleading that challenged the claim to the total amount sought, nor does she allege that she challenged the state garnishment proceeding.  To that end, the right to collect the garnishment costs was resolved against the plaintiff, and it is precluded from being reconsidered in this action.

## V.     Plaintiff has not shown that the debt at issue in the underlying action was a consumer debt.

Plaintiff's Fair Debt Collection Practices Act claims fail to state a claim upon which relief can be granted because she has failed to demonstrate the actions at issue related to a consumer debt.  To be sure, the Complaint alleges that jurisdiction arises under the civil remedy created by 15 U.S.C. §1692k(d) as a federal question pursuant to 28 U.S.C. §1331.   In order to present a FDCPA claim, however, plaintiff's debt must be consumer in nature.  *See* 15 U.S.C. §1692a(5).  In other words, the debt must be "primarily for personal, family, or household purposes."  *Id*.   This inquiry is at the threshold of any litigation under the FDCPA.  *Mabe v. G.C. Services Ltd. Partnership*,

32 F.3d 86, 87-88 (4th Cir. 1994); *see also Boosahda v. Providence Dane LLC*, No. 10-1933 (4th Cir January 31, 2012) (*per curiam*) (unpublished).  To trigger the FDCPA, the debt must be the result of "a transaction in which a consumer is offered or extended the right to acquire 'money, property, insurance, or services' which are 'primarily for household purposes' and to defer payment."  *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168-69 (3rd Cir. 1988) (cited with approval in *Mabe,* 32 F.3d at 88).

A detailed review of the factual averments of the case at bar fail to show that the plaintiff has made sufficient allegations in her Complaint to support a claim that the debt incurred in her use of the credit account was for personal, family, or household purposes.  Rather, plaintiff refers in her Complaint to actions allegedly done by these defendants to "consumers."  To the extent that plaintiff relies on this statement alone as sustaining her claim, this recitation is not the sort of detailed pleading that is required under Rule 8 as now applied by the federal courts following *Twombly* and *Iqbal*. Without a particular factual basis to show that the debt at issue is a qualifying debt, this action cannot continue.

**VI.    The *bona fide* error defense under the FDCPA operates to insulate this defendant from liability in this action.**

The defendant is entitled to the dismissal in this action as the Complaint, on its face, reveals that any action that may later be deemed to have been in violation of the FDCPA was taken in good faith and resulted from a *bona fide* error.  Under the FDCPA, in the event that a violation occurs that is shown by a preponderance of the evidence not to have been intentional and resulted instead from a *bona fide* error, notwithstanding the maintenance of procedures reasonably adapted to avoid such an

error, the debt collector may not be held liable.   15 U.S.C. § 1692k(c).   Ordinarily, resolution of this issue is premature at the Rule 12(b)(6) stage, *see Sayyed v. Wolpoff & Abramson*, 485 F. 3d 226, 235 (4th Cir. 2007) and the defendant carries the burden of establishing the applicability of the defense, *see Warren v. Sessoms & Rogers, P.A.*, 676 F. 3d 365, 375 (4th Cir. 2012); however, the facts in this case as presented by the plaintiff in her own Complaint reveal that the defendant is entitled to the benefit of the defense.

Here, plaintiff asserts that the inclusion of garnishment costs on behalf of the judgment creditor on the Suggestion for Garnishment violates numerous provisions of the FDCPA.   For the reasons stated herein, the plaintiff's claims are meritless. Assuming *arguendo* that the plaintiff's arguments about the lawfulness of collecting garnishment costs is correct, the specific allegations of the allegedly wrongful conduct reveal that they were necessarily taken in good faith when (1) the statutorily mandated state forms that were to be completed included a place for the listing of the garnishment costs to be collected, (2) the Virginia statute setting out the form of the Garnishment Summons included a line item for garnishment costs, and (3) the Virginia Supreme Court instructions for the completion of garnishment forms described the line item as intending to reflect the recovery of garnishment costs.   The Complaint herein fails to state that any actions by this defendant were taken in bad faith or with malicious intent. Rather, the Complaint, fairly read, addresses only the allegedly mistaken belief that the defendant was entitled to seek the costs associated with the single garnishment being effected.   In light of the applicable facts that existed when the defendant acted, there is no allegation or evidence that could support a claim that the error, if any, was made in

other than a good faith belief in the lawfulness of the action.  To be sure, there is no set of facts that has been (or can be) pled from which a reasonable person approaching this issue would not have believed that the conduct of this defendant was lawful.

The second prong of the *bona fide* error defense has been mooted by the amendment of Va. Code § 8.01-511 in 2012.  While this defendant contends that its actions to seek garnishment costs against plaintiff were lawful in April 2012 for the reasons set forth above, the statute relied upon by plaintiff has been amended so that even under plaintiff's construction the statute expressly allows the conduct of the defendant in this action.  As such, there is no need for the implementation of systems to prevent the repetition of conduct that plaintiff contends had been unlawful, but that even she must admit is now perfectly within the bounds of the applicable code section.

As such, in obedience to 15 U.S.C. § 1692k(c), this defendant is entitled to dismissal of this action.

## CONCLUSION

For these reasons, plaintiff's Complaint in this action must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

GLASSER & GLASSER, PLC


_____/s/_____
James A. Cales III, Esquire
Virginia State Bar No. 41317
Counsel for Defendant
Furniss, Davis, Rashkind and Saunders, P.C.
6160 Kempsville Circle, Suite 341B

Post Office Box 12525
Norfolk, Virginia 23541-0525
Telephone No. (757) 461-7100
Facsimile No. (757) 461-0083
Email: jcales@furnissdavis.com

Alan Brody Rashkind, Esquire
Virginia State Bar No. 12658
James A. Cales III, Esquire
Virginia State Bar No. 41317
Furniss, Davis, Rashkind and Saunders, P.C.
6160 Kempsville Circle, Suite 341B
Post Office Box 12525
Norfolk, Virginia 23541-0525
Telephone No.  (757) 461-7100
Facsimile No.   (757) 461-0083

## CERTIFICATE

I hereby certify that on the 7th day of June, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF. system, which will then send a notification of such filing to the following:

_____/s/_____
James A. Cales III, Esquire
Virginia State Bar No. 41317
Counsel for Defendant
Furniss, Davis, Rashkind and Saunders, P.C.
6160 Kempsville Circle, Suite 341B
Post Office Box 12525
Norfolk, Virginia 23541-0525
Telephone No. (757) 461-7100
Facsimile No. (757) 461-0083
Email: jcales@furnissdavis.com